CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
2/18/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES C. SIMMONS, ) | |
| ) | Civil Action No. 7:24-cv-00547 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CORRECTIONS OFFICER ) | |
| NEWMAN, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

Plaintiff James Simmons, a Virginia inmate proceeding *pro se*, filed this civil-rights action under 42 U.S.C. § 1983 and Virginia law against Corrections Officer K. Newman ("Officer Newman"). Simmons alleges that, while being escorted from the showers back to his cell, Officer Newman utilized excessive force, violating Simmons's constitutional rights and Virginia law. This matter is now before the court on Officer Newman's motion for summary judgment. For the reasons stated below, the court will deny the motion.

## I.   BACKGROUND

The following facts are either undisputed or presented in the light most favorable to Simmons, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Henry v. Purnell*, 652 F.3d 524, 527 (4th Cir. 2011). They are primarily established through affidavits and declarations from prison staff (*see* Aff. of P. Lampman; Aff. of R. Hickman; Decl. of K. Newman [ECF Nos. 18-1, 18-2, and 22]), and surveillance footage of Simmons's and Officer Newman's interaction on the Restorative Housing Unit ("RHU") floor on the night in question (*see* Def.'s Br. Supp. Mot. Summ. J. Exs. B-1–B-7 ("RHU Footage") [ECF

No. 18]).[1] Simmons does not offer any evidence in opposition to Officer Newman's motion for summary judgment, relying on the unsworn statements in his response brief. (*See generally* Pl.'s Opp. Summ. J. ("Pl.'s Opp.") [ECF No. 21].) But Simmons's verified complaint, which contradicts Officer Newman's account of their encounter in several key respects, is sworn testimony and thus sufficient to defeat summary judgment. *See Goodman v. Diggs*, 986 F.3d 493, 499 (4th Cir. 2021) (noting that a verified complaint has "evidentiary value as an affidavit at the summary judgment stage").

Simmons's claims stem from allegations that, on the evening of February 5, 2024, Officer Newman used excessive force on him and assaulted and battered him in the RHU of the Virginia Department of Corrections' ("VDOC's") River North Correctional Center ("RNCC").[2] (*See* Compl. ¶¶ G.1–2 [ECF No. 1].) That evening, Officer Newman was on duty in the RHU. (Def.'s Br. at 2 & Ex. 18-2; Decl. of K. Newman ¶ 4; Aff. of R. Hickman ¶ 4.) At approximately 9:13 p.m., after Simmons's shower and consistent with standard security protocols, Officer Newman placed Simmons in handcuffs behind his back and walked him across the pod towards his cell. (Def.'s Br. ¶ 3; RHU Footage 9:13:14.) Before reaching the end of the pod, Simmons retrieved a book from another inmate's cell.[3] (Def.'s Br. ¶ 4; RHU Footage 9:13:34.) Officer Newman took the book from Simmons, and while he examined it, Simmons walked to a cart at the front of the pod and took an apple. (Def.'s Br. ¶ 4; RHU

---

[1] The surveillance videos were submitted as multiple exhibits, but because each video shows different angles of the incident with the same time stamps, the court cites the footage collectively as "RHU Footage."

[2] Simmons has since been transferred to VDOC's Wallens Ridge State Prison. (Pl.'s Opp. Mot. Summ. J. ("Pl.'s Opp.") at 1 [ECF No. 21].)

[3] Simmons retrieved the book by facing his back to the other inmate and receiving the book in his hands, still cuffed behind his back. (RHU Footage 9:13:34.)

Footage 9:13:40–9:13:48.) Simmons asserts that Officer Newman gave him permission to retrieve the book and the apple; Officer Newman denies that he did so. (*See* Compl. ¶ D.2; Def.'s Br. ¶ 4; Pl.'s Opp. at 2; Decl. of K. Newman ¶ 4.) Officer Newman, still holding the book, walked towards Simmons and took the apple from his cuffed hands. (Def.'s Br. ¶ 5; RHU Ex. 9:13:49.) As Officer Newman turned his back towards Simmons to place the book and apple on the cart, Simmons walked towards him. (RHU Footage 9:14:06–9:14:11.) Officer Newman then turned towards Simmons, and the men began conversing face-to-face; at that time, Officer Newman did not touch Simmons, and Simmons remained stationary. (RHU Footage 9:14:11–9:14:42; Aff. of R. Hickman ¶ 8.)

Their ensuing conversation eventually became heated, and Simmons appeared to yell at Officer Newman, before turning and walking away. (RHU Footage 9:14:42–46.) Officer Newman followed Simmons and grabbed his arms—which Simmons claims was done with such force that it cut off his circulation (*see* Compl. ¶¶ D.5–6)—then walked beside him for a few moments. (RHU Footage 9:14:6–9:14:51.) Simmons then pulled away from Officer Newman's grasp and, when facing Officer Newman again, re-engaged in conversation with him.[4] (Def.'s Br. ¶ 6; RHU Footage 9:14:51–9:15:00.) Simmons then took one step towards Officer Newman, who simultaneously deployed one burst of oleoresin capsicum ("OC") spray in Simmons's face. (Def.'s Br. ¶ 7; RHU Footage 9:15:00.) Simmons turned to shield his face, and when he briefly turned back towards Officer Newman's direction, Officer Newman

---

[4] Officer Newman asserts that, during this conversation, Simmons cursed at him; Officer Newman "perceived this behavior as aggressive." (Def.'s Br. ¶ 6; *see also* Decl. of K. Newman ¶ 5; Aff. of R. Hickman ¶ 9.) Simmons denies that he spoke aggressively and argues instead that Officer Newman was verbally abusive. (Pl.'s Opp. at 3). The RHU Footage contains no audio to confirm these statements.

deployed a second burst of OC spray to Simmons's face. (Def.'s Br. ¶ 8; RHU Footage 9:15:00–9:15:06.) A second corrections officer then arrived and escorted Simmons to the showers for decontamination. (Def.'s Br. ¶ 8; RHU Footage 9:15:10; Aff. of R. Hickman ¶ 10.) Simmons was later evaluated by medical staff, who reported that he suffered "[n]o acute injuries or abuse" and advised him to follow up with medical staff for any irritation. (Def.'s Br. ¶ 9 & Ex. 18-1; Aff. of P. Lampman ¶ 4; Aff. of R. Hickman ¶ 11.) Simmons, however, alleges that the encounter caused physical and mental injuries. (*See* Compl. ¶ D.10.)

On August 19, 2024, Simmons filed suit against Officer Newman, alleging that the use of OC spray constituted (1) excessive force in violation of the Eighth Amendment and (2) an assault and battery in violation of Virginia Law.[5] (*See* Compl. ¶¶ F.1–2.) He seeks a declaratory judgment, compensatory and punitive damages, and legal fees and costs. (*See* Compl. ¶¶ G.2–9.) On March 6, 2025, Officer Newman filed for summary judgment (*see* Mot. Summ. J. [ECF No. 17]), which Simmons opposed (*see generally* Pl.'s Opp.). The matter is now ripe for disposition.

## II.  STANDARD OF REVIEW

Under Rule 56(a), the court can only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn*

---

[5] In his opposition to Officer Newman's motion, Simmons asserts that he seeks recovery "based on the use of excessive force, the denial of procedural due process, and the denial of medical care." (*See* Pl.'s Opp. at 1.) Because Simmons's Complaint seeks relief only on the basis of excessive force and assault and battery—and because he has not amended his Complaint to reflect the additional claims—the court will not consider his procedural due process and denial of medical care claims. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

- 4 -

*v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court considers "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). It may not rely on beliefs, conjecture, speculation,

or conclusory allegations to defeat a motion for summary judgment. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). Nevertheless, a party's sworn statements about his own personal accounts are sufficient to create a genuine issue of material fact even without other corroborating evidence. *Clark v. Payne*, No. 21-6634, 2023 WL 4888837, at *1 (4th Cir. Aug. 1, 2023) (citing *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991)).

### III. ANALYSIS

When reviewing the merits of Officer Newman's motion, the court considers the evidence in the light most favorable to Simmons. *See Glynn*, 710 F.3d at 213. Officer Newman argues that, because the record shows that his "use of OC spray was necessary to regain control [of] Simmons," he is entitled to summary judgment on both of Simmons's claims. (Def.'s Br. at 1.) On the present record, the court disagrees.

#### A. Excessive Force

Officer Newman first argues that he is entitled to summary judgment on the excessive-force claim because his "use of the OC spray was necessary and proportional under the circumstances." (Def.'s Br. at 7.) "[A] claim that [prison] officials applied excessive force falls under the Cruel and Unusual Punishments Clause of the Eighth Amendment, which 'protects inmates from inhumane treatment and conditions while imprisoned.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013); *see also Iko v. Shreve*, 525 F.3d 225, 238 (4th Cir. 2008). To prevail on an excessive-force claim,[6] a plaintiff must prove "that a serious use of force occurred and that [the d]efendant [employed the force] 'maliciously and sadistically[,] rather than as part

---

[6] These elements mirror a general Eighth Amendment inquiry, which analyzes whether the prison official acted with a sufficiently culpable state of mind and inflicted an objectively serious injury or deprivation upon the inmate. *See Williams*, 77 F.3d at 761.

of a good-faith effort to maintain or restore discipline.'" *Johns v. Gwinn*, 503 F. Supp. 3d 452, 476 (W.D. Va. 2020) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010)); *see also Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Under the first prong, courts analyze whether the use of force was objectively and "sufficiently serious to establish a cause of action." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). "This is not a high bar, requiring only something more than '*de minimis*' force." *Id.* at 112; *see also Wilkins*, 559 U.S. at 37–38 (explaining that, while the severity of the injury can play a factor in the determination of whether excessive force was used, it is the force itself that ultimately counts). Here, Officer Newman's use of OC spray[7] constituted an objectively serious use of force, and Officer Newman does not seriously dispute this conclusion.[8] *See Johns*, 503 F. Supp. 3d at 477 (finding that use of OC spray to subdue an inmate is serious use of force and listing cases where courts have found the same); *Riddick v. Kiser*, No. 7:20CV00096, 2021 WL 4453667, at *9 (W.D. Va. Sep. 29, 2021).

Rather, Officer Newman's argument concerns the second, subjective prong, which requires the "wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The wantonness inquiry "turns on whether force was applied in a good[-]faith effort to maintain

---

[7] Simmons also alleges that Officer Newman grabbed his arm and caused him greater than *de minimis* harm, which constituted a violation of the Eighth Amendment. (*See* Compl. ¶¶ D.9–10.) The court will not analyze this use of force because Officer Newman's use of OC spray provides sufficient grounds to deny summary judgment. Simmons is not precluded from making this argument at trial.

[8] Officer Newman seems to imply that Simmons's claims should fail because Simmons was not permanently or severely injured. (*See* Def.'s Br. at 6–8.) Notwithstanding Simmons's contradictory allegations that he was harmed (*see* Compl. ¶ D.10), which the court credits at this stage, Officer Newman's argument misses the mark as a matter of law: "'[T]he pain itself' can constitute sufficiently serious injury, even if the harm is not 'enduring.'" *Williams*, 77 F.3d at 762 (quoting *Norman v. Taylor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc)); *see also May v. Wright*, No. 7:23-cv-00053, 2025 WL 726578, at *4 (W.D. Va. Mar. 6, 2025) ("[F]orce that is maliciously applied can violate the Eighth Amendment even if it does not result in serious injury.").

or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21 (internal quotations omitted). "Corrections officers act in a 'good faith effort to maintain or restore discipline' . . . not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." *Brooks*, 924 F.3d at 113 (quoting *Hudson*, 503 U.S. at 3); *see also Whitley*, 475 U.S. at 1084 ("[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used."). "But corrections officers cross the line into impermissible motive . . . when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." *Brooks*, 924 F.3d at 113. In the Fourth Circuit, courts have held that deploying OC spray "in greater quantities than necessary" to restore order "or for the sole purpose" of harming the inmate violates the Eighth Amendment. *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996); *Johns*, 503 F. Supp. 3d at 478; *Tedder*, 527 F. App'x at 273. To determine if a prison official maliciously applied force, either by deploying OC spray or by some other means, courts consider four factors (the so-called "*Whitley* factors"):

> (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them" at the time; and (4) the "efforts made to temper the severity" of the force applied.

*Tedder*, 527 F. App'x at 272 (quoting *Whitley*, 475 U.S. at 321). If these factors weigh in favor of the prison official, he is deemed to have used force in good faith and is not liable under the Eighth Amendment. *Id.*

Viewing the record evidence in the light most favorable to Simmons, the court cannot conclude, as a matter of law, that Officer Newman acted in good faith. At the threshold, the evidence he marshals in support of his motion for summary judgment merely contradicts, rather than refutes, Simmons's sworn allegations. Moreover, this evidence fails to resolve significant questions (*e.g.*, whether Simmons, in fact, cursed at him[9] or had permission to retrieve the book or apple). At bottom, the court is presented with materially distinct accounts of the events surrounding Officer Newman's deployment of OC spray. A jury, rather than the court, must resolve this factual dispute by weighing the evidence and determining which party is more credible. While the video sheds some light on the incident, it does not resolve this factual dispute, let alone in Officer Newman's favor.

Considering the first and second *Whitley* factors together, the video only calls into question "the need for the use of force in this degree"—that is, whether Officer Newman needed to deploy the OC spray to subdue Simmons. *Brooks*, 924 F.3d at 116; *see also Arnold v. Cregger*, No. 7:21-cv-00533, 2024 WL 864367, at *7 (W.D. Va. Feb. 29, 2024). To be sure, Simmons took a step forward towards Officer Newman and, according to the officer, cursed at him. (RHU Footage 9:15:00.) But the video does not conclusively establish that Simmons's

---

[9] As noted, the court has no way of determining whether Simmons cursed at Newman, as the video did not capture sound. This evidentiary shortcoming provides yet another reason for a jury to weigh the evidence and determine the credibility of the parties. In any event, it is not settled (in the court's mind) that cursing warrants the application of OC spray against a prisoner.

- 9 -

actions necessitated the use of OC spray in the first instance, especially since Simmons's hands were restrained behind his back. *See Tedder*, 527 F. App'x at 273 (reversing grant of summary judgment to officer because, on the first and second *Whitley* factors, evidence permitted different conclusions about whether inmate resisted or acted aggressively enough to justify officer's use of OC spray); *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008)[10] (finding that, when plaintiff was in handcuffs, "it is not clear that [the officer] stating 'stop it' and subsequently tasering [the inmate] was not in fact a response to her stating 'f*** you'"), *abrogation recognized on other grounds by Brooks*, 924 F.3d at 114 n.4. Moreover, Officer Newman deployed *two* bursts of OC spray in quick succession, allegedly because the first only hit Simmons's cheek. (Def.'s Br. at 8; Decl. of K. Newman ¶ 5.) The video, however, shows that the second burst was deployed after Simmons was shielding himself from the first spray and turned slightly back in Officer Newman's direction (RHU Footage 9:15:06), which, in similar cases, has "[given] rise to [a] reasonable inference that force was applied maliciously." *Iko*, 525 F.3d at 239–40 (concluding that, while initial use of pepper spray was warranted to control unruly inmate, the additional bursts of spray when the inmate was on the floor suggested malicious intent); *Brooks*, 924 F.3d at 115 (denying summary judgment to officers because tasing inmate in quick succession did not give inmate enough time to recover and signal compliance, suggesting that officers' continued use of the taser was punitive). At bottom, a

---

[10] The plaintiff in *Orem* was a pre-trial detainee at the time the violations occurred; thus, the Fourteenth Amendment governed her claims. 523 F.3d at 444. However, because Fourteenth Amendment and Eighth Amendment excessive-force claims were, at the time, subject to the same standard (whether force was applied in good faith or maliciously), the court cites *Orem* for its contextual relevance. *Id.* at 446.

reasonable jury, accepting Simmons's account as true, could find that Officer Newman's deployment of OC spray was excessive. *See Arnold*, 2024 WL 864367, at *7.

There are also genuine issues of fact underlying the third *Whitley* factor, which concerns "the extent of [Simmons's] threat to the safety of staff and inmates" based on Officer Newman's perception at the time. 475 U.S. at 321. First, the RHU video calls into question whether Officer Newman perceived a physical threat to himself or others—Simmons and Officer Newman were alone on the prison floor, engaged in a non-physical altercation, and, as noted, Simmons's hands were cuffed behind his back. But Officer Newman also argues that he used the OC spray to maintain order after Simmons cursed at him, which he perceived as a show of aggression. (Def.'s Br. at 7–8.) It is true that a prison official, in some circumstances, may deploy OC spray "in good faith" to subdue an "unruly or recalcitrant" inmate. *Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see also Whitley*, 475 U.S. at 322–23 (finding that force was warranted to prevent unruly inmates from taking hostages during prison riot). But the court cannot conclude as a matter of law that Simmons was justified in deploying two bursts of OC spray under the circumstances presented. *See, e.g., Orem*, 523 F.3d at 447 (finding that officers violated the Eighth Amendment by tasing an inmate, even though she was screaming and rocking the transport vehicle). Conversely, the factfinder could reasonably find that the perceived threat did not justify the force deployed.

Finally, the court considers the fourth *Whitley* factor, "which focuses on corrections officers' efforts to avoid or temper a forceful response." *Brooks*, 924 F.3d at 117. Before resorting to the use of the OC spray, Officer Newman appears to attempt to regain control of Simmons, both by speaking to him and by guiding him towards his cell. (RHU Footage

9:13:18–9:15:00.) Officer Newman argues that, because he took these less forceful measures and, after he utilized OC spray as a last resort, quickly mitigated the resulting harm by taking Simmons to the shower to decontaminate (Def.'s Br. at 7–8), he is entitled to summary judgment. But that argument misses the mark. In the Fourth Circuit, Officer Newman's "'verbal attempt' to reason with [Simmons] before resorting to force does not preclude an inference that force was applied maliciously, in order to punish this continued intransigence." *Brooks*, 924 F.3d at 117 (quoting *Orem*, 523 F.3d at 447) (cleaned up). While Officer Newman's less forceful attempts are certainly pertinent to the overall *Whitley* analysis, it is for a jury to assess those actions in conjunction with all available evidence. *See id.* ("To be clear, under *Whitley*, a jury should consider the officers' preliminary efforts to secure [the inmate's] compliance without using violent force . . . . But the ultimate inferences to be drawn from this *Whitley* factor, like the others, are not so plain that they may be resolved [on summary judgment].").

Because reasonable minds could differ over whether Officer Newman used the OC spray "for the very purpose of inflicting harm[,]" rather than to restore order in good faith, the court will deny his motion for summary judgment on the excessive-force claim. *Williams*, 77 F.3d at 763.

### B. Assault and Battery

Officer Newman also moves for summary judgment on Simmons's assault and battery claim, arguing that his "use of force was justified under the circumstances." (Def.'s Br. at 8.) Because Simmons's excessive-force claim survives summary judgment, so will his assault and battery claim.

In Virginia, "[t]he tort of assault consists of an act intended to cause either harmful or offensive conduct with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Id.* "A legal justification for the act being complained of will defeat an assault or battery claim. . . . Virginia recognizes that [law enforcement officials] are legally justified in using reasonable force to execute their lawful duties." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009).

While excessive force and assault and battery claims are separate causes of action, they are closely related. *Frye v. Hodges*, 839 F. Supp. 2d 843, 848 (W.D. Va. 2011) ("While an officer's liability for the use of excessive force under § 1983 is not completely co-extensive with the common law tort liability for battery, . . . unreasonable or unnecessary force is the touchstone for both causes of action." (cleaned up)). In other words, a "parallel state law claim of assault and battery is subsumed within the federal excessive force claim" and will go forward if the associated excessive-force claim survives summary judgment. *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *see also Frye*, 839 F. Supp. 2d at 848 ("Given the court's finding that [defendant] did not use excessive force as a matter of law, no fair-minded jury could find for the plaintiffs on their [assault and battery] claims."); *Arnold,* 2024 WL 864367, at *5 n.9 ("Any assault and battery claims that [the plaintiff] brings against [defendant] therefore survive to trial because . . . [the] excessive force claim survives summary judgment."); *Johnson v. Dep't of Alcoholic Beverage Control*, No. 3:15-cv-000555, 2016 WL 7235836, at *7 (W.D. Va. Dec. 13, 2016) (explaining that a state law claim will "'rise or fall' with [an] excessive force claim");

*Johnson v. City of Fayetteville*, 91 F. Supp. 3d 775, 816–17 (E.D.N.C. 2015) (concluding that, because defendant was not entitled to summary judgment on excessive-force claim, it was also not entitled to summary judgment on assault and battery claim).

Simmons's Eighth Amendment and assault and battery claims are inextricably intertwined—both factually and legally. The record evidence gives rise to genuine issues of material fact as to whether Officer Newman acted reasonably under the circumstances. Ultimately, a jury must weigh this evidence and determine whether he did (or did not) and thus, is liable for assault and battery.

### IV. CONCLUSION

For the foregoing reasons, the court will deny Officer Newman's motion for summary judgment. Both of Simmons's claims survive, and the matter will be set for trial.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 18th day of February, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE